STATE OF HAWAII *v.* CHESTER HANAWAHINE,
CATALINO S. GEDARRO, HARRY I. S. AH NEE,
EARL K. H. KIM, SR., RALPH H. MARTIN
and PENROD FANENE.

No. 4680

June 25, 1968

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

About 9:30 p.m., on November 22, 1966, Police Officer Leroy Keone observed a 1966 Lincoln Continental two-door sedan with six occupants, defendants herein, speeding 50 miles per hour in a 25 mile per hour speed zone. Officer Keone pulled up to the left and alongside the car and motioned the driver, defendant Hanawahine, whom Officer Keone recognized, to pull over to the curb and stop. Officer Keone parked his motorcycle about 15 feet behind defendant's car and radioed police central station to send another motorcycle officer for assistance. Immediately upon stopping, defendant Hanawahine got out of the car and walked over to Officer Keone. Officer Keone informed defendant Hanawahine that he had been stopped for speeding. Defendant Hanawahine walked back to the car to talk to the other occupants in the car. Officer Keone then made a second radio call to police central sta-

tion for assistance and to check on reports of any stolen cars. Officer Keone then proceeded to issue a traffic citation.

In the meantime, Police Lieutenant Howell and Police Sergeant Ng, who were in a patrol car near the area where defendants' car was stopped, upon hearing Officer Keone's second radio call for assistance, drove over to assist Officer Keone and parked their patrol car behind Officer Keone's motorcycle. Officer Keone told Lt. Howell that the defendants were stopped for speeding. Lt. Howell approached defendants' car and with the aid of his flashlight, looked to see who were in the defendants' car. Defendant Earl Kim, Sr., who had gotten out of the car and was standing at the right front fender of the car, called out to Lt. Howell. Lt. Howell recognized defendant Kim and some of the other defendants, having had previous contact with them. Lt. Howell knew from his past experience that, on occasion, defendants carried weapons. Lt. Howell asked defendant Kim to show him the registration papers for the car. Defendant Kim crossed the front of the car, entered from the left front door and reached into the glove compartment. Standing to the left and about a foot away from the car, Lt. Howell scanned the front floor of the car with his flashlight and saw a cardboard box. He then scanned the rear floor of the car and saw the butt of an automatic pistol which was partially covered with newspaper. He immediately ordered the defendants in the car to get out and placed all of the defendants under arrest. Lt. Howell entered the car and found a Mauser pistol on the rear floor, a Smith & Wesson revolver under the right front seat, an M-1 carbine rifle with a sawed-off barrel in the cardboard box on the front floor and a Colt Cobra revolver in the front pocket of a trench coat on the rear seat. He searched the defendants and found an Astra pistol on defendant Ah Nee.

Defendants moved to suppress and dismiss the evidence of the weapons found in the car. The trial court denied the motion. Defendants were tried, found guilty and convicted under R.L.H. 1955, Sec. 267-25, which states:

> "Carrying deadly weapons; penalty. Any person not authorized by law, who carries concealed upon his person or within any vehicle used or occupied by him, or who is found

armed with any dirk, dagger, blackjack, slug shot, billy, metal knuckles, pistol, or other deadly or dangerous weapon, shall be fined not more than $250, or imprisoned not more than one year, or both. Any such person may be immediately arrested without warrant by any sheriff, policeman, or other officer or person. Any weapon, above enumerated, shall, upon conviction of the one carrying or possessing same under this section, be summarily destroyed by the chief of police or sheriff."

Defendants appeal on the ground that the trial court erred in denying their motion to suppress and dismiss since the evidence of the weapons was obtained as a result of an illegal search and seizure, contrary to the provisions of the Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Hawaii Constitution, which reads:[1]

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A search without a warrant incidental to an arrest without a warrant is valid only where the officers had probable cause to believe a crime was being committed.[2] *State* v. *Texeira,* 50 Haw. 138, 433 P.2d 593 (1967).

---

[1]Article 1, Sec. 5 of the Hawaii Constitution is framed in the exact language of the Fourth Amendment. See *State* v. *Pokini,* 45 Haw. 295, 308, 367 P.2d 499 (1961), for a discussion of both provisions.

[2]With regard to the incidental search and probable cause, we find it apropos to quote from Justice Jackson's dissent in *Brinegar* v. *United States,* 338 U.S. 182 (1948):

"We must remember that the extent of any privilege of search and seizure without warrant which we sustain, the officers interpret and apply themselves and will push to the limit. We must remember, too, that freedom from unreasonable search differs from some of the other rights of the Constitution in that there is no way in which the innocent citizen can invoke advance protection. For example, any effective interference with freedom of the press, or free speech, or religion, usually requires a course of suppressions against which the citizen can and often does go to the court

The incidental search is further limited in scope to a situation where it is reasonably necessary to discover the 'fruits or instrumentalities of the crime for which the defendant is arrested, or to protect the officer from attack, or to prevent the offender from escaping. *People* v. *Watkins,* 19 Ill. 2d 11, 166 N.E. 2d 433 (1960). Defendants argue that since defendant Hanawahine was placed under arrest for the traffic offense of speeding when Officer Keone stopped their car, that under the first limitation there was no probable cause for an incidental search following the traffic offense as there are no "fruits" for that offense. Hence, any search and seizure incidental to the traffic offense in the instant case was illegal. *People* v. *Samson,* 156 Cal. App. 2d 250, 319 P.2d 422 (1957); *People* v. *Marsh,* 20 N.Y. 2d 98, 228 N.E. 2d 783 (1967); *People* v. *Watkins,* supra.

At the outset, however, defendants assume that Lt. Howell's

---

and obtain an injunction. Other rights, such as that to an impartial jury or the aid of counsel, are within the supervisory power of the courts themselves. Such a right as just compensation for the taking of private property may be vindicated after the act in terms of money.

"But an illegal search and seizure usually is a single incident, perpetrated by surprise, conducted in haste, kept purposely beyond the court's supervision and limited only by the judgment and moderation of officers whose own interests and records are often at stake in the search. There is no opportunity for injunction or appeal to disinterested intervention. The citizen's choice is quietly to submit to whatever the officers undertake or to resist at risk of arrest or immediate violence.

"And we must remember that the authority which we concede to conduct searches and seizures without warrant may be exercised by the most unfit and ruthless officers as well as by the fit and responsible, and resorted to in case of petty misdemeanors as well as in the case of the gravest felonies.

"With this prologue I come to the case of Brinegar. His automobile was one of his 'effects' and hence within the express protection of the Fourth Amendment. Undoubtedly, the automobile presents peculiar problems for enforcement agencies, is frequently a facility for the perpetration of crime and an aid in the escape of criminals. But if we are to make judicial exceptions to the Fourth Amendment for these reasons, it seems to me they should depend somewhat upon the gravity of the offense. If we assume, for example, that a child is kidnaped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger."

conduct in scanning the interior of their car with a flashlight constituted an unreasonable search. It is not shown that there was a general exploration as, for example, asking the defendants to get out of the car, overturning seats or back rests, looking into the glove compartment, or opening the trunk door prior to placing defendants under arrest. "A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view." *People* v. *Exum*, 382 Ill. 204, 210, 47 N.E. 2d 56 (1943). What is in open view, if no dominion is exercised over it, is not a search. *U.S.* v. *Williams*, 314 F.2d 795, *State* v. *Blood*, 190 Kan. 812, 378 P.2d 548 (1963). The search began after, not before, Lt. Howell saw the partially hidden pistol on the rear floor of the car, and contemporaneously arrested the defendants. The sighting of the partially hidden pistol was sufficient to support the requirement of probable cause to make an incidental search without a warrant for other weapons in the car. *Draper* v. *United States*, 358 U.S. 307 (1959); *Beck* v. *Ohio*, 379 U.S. 89 (1964); *State* v. *Pokini*, 45 Haw. 295, 367 P.2d 499 (1961).

It does not appear that defendants seriously dispute the proposition that if a police officer lawfully stops an automobile for a traffic offense, i.e., the traffic offense is not used as a mere pretext so that the police officer could conduct a general search for and seize incriminating evidence [*United States* v. *Lefkowitz*, 285 U.S. 452 (1932); *United States* v. *Harris*, 321 F.2d 739 1963) ], then observes a crime being committed in his presence, he may arrest for that crime other than the traffic violation. *People* v. *Russo*, 38 Misc. 2d 957, 239 N.Y.S. 2d 374; *State* v. *Padavano*, 81 N.J. Super 321, 195 A.2d 499; *People* v. *Lopez*, 60 Cal. 2d 223, 32 Cal. Rptr. 424, 384 P.2d 16, cert. den. 375 U.S. 946; *State* v. *Krogness*, 238 Or. 135, 388 P.2d 120, cert. den. 377 U.S. 992; *State* v. *Malloy*, 336 S.W. 2d 383, cert. den. 364 U.S. 852, reh. den. 364 U.S. 925.

Defendants suggest that scanning the interior of their car with the use of a flashlight would strongly indicate that Lt. Howell was conducting a search before he saw the partially hidden pistol on the rear floor of the car. Defendants do not cite any

authority nor do we find any which holds that the use of a flashlight is per se unreasonable and that any evidence uncovered as a result is an illegal search and seizure, nor have defendants advanced any sound reason or principle to outlaw a reasonable use of a flashlight by a police officer. There is authority on the other hand which permits the use of a flashlight and hold that it is not an unreasonable search and seizure. *United States* v. *Lee,* 274 U.S. 559 (1927) ; *Safarik* v. *United States,* 62 F.2d 892 (8th Cir. 1933) ; *Smith* v. *United States,* 2 F.2d 715 (4th Cir. 1924); *Smith* v. *State,* 155 Tenn. 40, 290 S.W.4 (1927). A case may arise in which the manner of its use may indicate that a search had begun or that an unreasonable search had been conducted, but in the instant case we do not find the probability that either could have occurred under the circumstances.

The trial court did not err in denying defendants' motion to suppress and dismiss.

Judgment affirmed.

*Ernest Y. Yamane* (*Bicoy and Yamane* of counsel) for defendants-appellants.

*Harold M. Fong,* Deputy Prosecuting Attorney (*John H. Peters,* Prosecuting Attorney with him on the brief) for plaintiff-appellee.