STATE OF HAWAII *v.* HENRY TORRES DIAS.

No. 4860.

JUNE 10, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE KABUTAN IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

This is a search and seizure case involving a warrantless search and the subsequent arrest of the defendant for the unlawful possession of narcotics. Pursuant to an informer's tip that the defendant was selling narcotics at a certain location, Officer Borges of the Honolulu Police Department established surveillance of the suspected narcotics activity at the corner of North School Street and Old Palama Road in Honolulu. He stationed himself in a men's rest room in a park approximately 150 to 200 yards from the intersection. The officer then conducted a surveillance with binoculars of a number of persons, including the defendant, conversing on privately used property in a passageway between two apartment houses. The apartments were located on the other side of the intersection from the surveillance post.

The officer saw a number of convicted narcotics violators approach the group, speak to the defendant, go behind the building with him, and return seconds later. With respect to one such person, the officer saw the defendant and the other party, Mr. Kim, make motions with their hands towards each other as if they were exchanging something although the officer said he saw nothing actually transferred. A few minutes later Mr. Kim and his wife drove up and parked twenty feet from the restroom where the officer was stationed. The officer observed Mr. Kim lean forward to the right of the steering wheel, sit up with a belt strapped around his left arm, and then rub his left arm vigorously with his right hand. Mrs. Kim performed the same motions. Such motions are commonly associated with the injection of heroin into the bloodstream.

The officer later observed another person, Mr. Bright, approach the defendant. Hand motions were made as though something were given to the defendant. The defendant then went to a washing machine positioned against one of the buildings. He reached behind it and appeared to hand something to Mr. Bright. Later, the defendant appeared to put something in a hole in the wall above the washing machine. At that point the officer radioed another officer to search the area near the machine and arrest the defendant for unlawful possession of narcotics. This was done and a quantity of heroin was found rolled up in newspaper and stuck in the top of the washing machine and in a hole in the wall behind the machine.

On cross-examination Officer Borges admitted that he never saw the defendant in possession of narcotics. In fact, he said he saw nothing exchanged by the defendant and the others. All he saw were various hand motions. Nothing was seen beside the washing machine or on top of it. The officer stated that he had probable cause to order the arrest because of "the people that I saw coming there; the activity, the actions, the way they met, I had reason to believe they were selling heroin. . . ." The officer further testified that there were no warrants for the search and the subsequent arrest although he admitted that it was possible to obtain the warrant without fear of losing the evidence.

Pursuant to Rule 41(e) of the Hawaii Rules of Criminal Procedure the defendant filed a motion to suppress the physical evidence on the ground that it was obtained as the result of an unlawful search and seizure. Pursuant to Rule 12 of the Hawaii Rules of Criminal Procedure he also filed a motion to dismiss the case on the ground that upon the suppression of the physical evidence there would be no probable cause to hold him for trial and on the further ground that there was no evidence linking the nar-

cotics to the defendant. After a hearing, the trial court denied the motions. It was then agreed to waive the jury and consider the proceedings as the trial of the case. The defendant was found guilty of unlawful possession of a narcotic drug under R.L.H. 1955, as amended §§ 52-10, 52-14 (now HRS §§ 329-1, 329-5) and sentenced to imprisonment for ten years.

The defendant appeals arguing (1) that there was an illegal search and seizure of the narcotics and (2) that the evidence was insufficient to find the defendant guilty beyond a reasonable doubt of unlawful possession of the narcotics.

We agree with the defendant's contentions. Because of the fact that this case contains so many constitutional errors which have traveled this far without being corrected, we are constrained to take this occasion to reaffirm the importance and the sanctity of one of our keystone individual liberties—the right to be free of unreasonable searches and seizures as embodied in the fourth amendment to the federal constitution. This hard-won right cannot be taken lightly. To regard the guarantees of the fourth amendment as technicalities or mere procedural hurdles is to deprecate the very basis of a fundamental heritage— the right to be left alone. It cannot be too much to ask that the police perform their function legally even though their quarry, the suspected criminal, may not. This was Mr. Justice Brandeis' point 40 years ago in his famous and now vindicated dissent in *Olmstead* v. *United States*, 277 U.S. 438, 485 (1928) :

> In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for

law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means —to declare that the Government may commit crimes in order to secure the conviction of a private criminal— would bring terrible retribution.

## I. THE SEARCH AND ARREST OF DEFENDANT.

### A. *Standing to Object to an Unreasonable Search and Seizure.*

The fourth amendment of the United States Constitution guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." Article I, section 5 of the Hawaii Constitution is similarly worded. The United States Supreme Court has held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp* v. *Ohio,* 367 U.S. 643, 655 (1961). This exclusionary rule is premised on the policy that if the police cannot use such evidence to obtain convictions, illegal police practices will be deterred. It is further supported by the policy of making the agents of the state perform their tasks within the law regardless of the lawless tactics of those they seek to bring to justice. *Mapp* v. *Ohio, supra,* at 656, 659.

At the outset the state would have us disregard the question of the constitutionality of the search and seizure, arguing that the defendant in this case has no "standing" to raise the objection. Relying on *Jones* v. *United States,* 362 U.S. 257 (1960), it argues that the defendant was on the grounds as a trespasser and had no rights. We do not agree. The state's argument confuses two very different points: they are (1) the question of standing and (2) the

question of what is an unreasonable search and seizure. *See State* v. *Matias,* 51 Haw. 62, 64, 451 P.2d 257, 259 (1969).

The short answer to the question of standing in this case is that the state cannot charge a person with possession and then deny that person his remedy at law to object to the search and seizure of that which the state says is his. The state cannot have it both ways. Mr. Justice Frankfurter put it aptly in *Jones* v. *United States,* 362 U.S. 257, 263-64 (1960):

> The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government.

Moreover, the defendant was the victim of the search and seizure as it was directed against him. *Jones, supra* at 261. Thus we conclude that standing exists in this case.

The more difficult problem not squarely raised by this appeal is whether the doctrine of "standing," which limits the exclusionary rule, has any place in the law of Hawaii. This we do not decide today.[1]

B. *Reasonable Expectations of Freedom from Governmental Intrusion.*

If the defendant has standing to raise the question of

---

[1] The issue squarely put is whether the "person aggrieved" under Rule 41(e) of the Hawaii Rules of Criminal Procedure is he who was the victim of the invasion of privacy or he against whom the illegally seized evidence is offered as evidence. *Compare* Alderman v. United States, 394 U.S. 165 (1969), affirming the standing doctrine, *with* People v. Martin, 45 Cal. 2d 755, 290 P.2d 855 (1955) (Traynor, C.J.) rejecting the standing doctrine. *See also* the opinion of Fortas, J., concurring and dissenting in part in Alderman v. United States, *supra* at 200. *See generally* White and Greenspan, *Standing to Object to Search and Seizure,* 118 U. Pa. L. Rev. 333 (1970).

the validity of the search, we must now ask whether there was a reasonable expectation of freedom from governmental intrusion by those against whom the search was directed so that the safeguards of the fourth amendment are applicable. *Katz* v. *United States*, 389 U.S. 347 (1967). The group of people stood between the two apartment buildings in the common passageway which was private property, although not theirs. While the space between the apartments was open to the plain view of the officer, it was not open to unlimited governmental intrusions such as the search which ensued.

In *State* v. *Matias*, 51 Haw. 62, 451 P.2d 257 (1969) an overnight guest of a tenant was granted a right to privacy on the premises of his host's apartment even though his host consented to a search. In that case we affirmed the broad proposition that "a person has a 'halo' of privacy wherever he goes and can invoke a protectable right to privacy wherever he may legitimately be and reasonably expect freedom from governmental intrusion." *Id.* at 65-66, 451 P.2d at 259. We relied heavily on the statement in *Mancusi* v. *DeForte*, 392 U.S. 364, 368 (1968) that:

> The Court's recent decision in Katz v. United States, 389 U.S. 347, also makes it clear that capacity to claim the protection of the amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.

Accordingly, the test is not whether the members of the group in the passageway were technically "trespassers," "licensees," or "invitees." It is one of reasonable expectations of privacy. Every individual has expectations of privacy with regard to his *person* wherever he may go, be it a public park or a private place; yet this is not so with regard to *places* where an individual happens to be. The

place must be of such a character as to give rise reasonably to these expectations of privacy. Since the passageway was located on private property, the group which met and socialized there had every expectation of freedom from governmental intrusion as to the premises and the protection of the fourth amendment therefore applies.

## C. *Necessity of a Search Warrant.*

Precisely because "[t]he right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals,"[2] it is well settled that a warrant must be obtained before a search may be conducted unless there are "exigent circumstances"[3] or the search is "incident to an arrest."[4] In the present case there were no special or exigent circumstances such as those mentioned in *Johnson, supra* at 15, which would have justified a warrantless search. The officer admitted this much on cross-examination. Furthermore,

[2] McDonald v. United States, 335 U.S. 451, 455-6 (1948). The entire paragraph from which the quoted words are taken is very instructive:

We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

[3] Warden v. Hayden, 387 U.S. 294, 298 (1967) (hot pursuit) ; Johnson v. United States, 333 U.S. 10, 15 (1948).

[4] Chimel v. California, 395 U.S. 752 (1969) ; Stoner v. California, 376 U.S. 483, 486 (1964) ; Rios v. United States, 364 U.S. 253, 261 (1960).

even if the arrest was for probable cause,[5] the search does not meet the test enunciated in *Chimel* v. *California,* 395 U.S. 752, 763 (1969) for a search "incident to an arrest." As the court said in *Chimel, supra:* "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel, supra* at 763, makes it abundantly clear that this is the area within the arrestee's *reach* and not, as the state has argued in the present case, ten feet from the arrestee in and about the washing machine where the narcotics were discovered. Exceptions to the constitutional requirement of a warrant must be strictly observed so that in practice they do not swallow up the requirement.

We conclude that the defendant had standing to assert his reasonable expectations of privacy, that the warrantless search was not justified by "exigent circumstances," and that it was not "incident to an arrest." A search warrant was therefore required and the failure of the police to obtain one requires that the evidence seized be suppressed and the decision of the trial court be reversed. The reversal of a conviction on these grounds is mandated by the state and federal constitutions as the result of improper police practices in failing to respect the constitutional rights of private citizens. It is the fault of the police, not the courts, that the defendant may go free.

## II. SUFFICIENCY OF EVIDENCE OF POSSESSION TO SUSTAIN A VERDICT OF GUILTY.

The only evidence linking the defendant with the narcotics was the hand motions toward the top of and behind

---

[5] Since we hold that a search warrant was necessary because the search was not "incident to an arrest," we need not resolve the question whether Officer Borges had "probable cause" to order the arrest of the defendant.

the washing machine. The officer testified he did not know the significance of these motions and admitted that the defendant may have been plugging the machine into the wall socket. The mere presence of the defendant plus what the officer saw are not enough to measure up to the statutorily and constitutionally required standard of proof of guilt beyond a reasonable doubt that the defendant was in possession of the narcotics. See HRS § 705-2; *In the Matter of Winship,* 397 U.S. 358 (1970). In short, the decision of the court as the finder of fact in the jury-waived trial on the question of guilt is not supported by "substantial evidence." *State* v. *Stuart,* 51 Haw. 656, 466 P.2d 444 (1970); *State* v. *Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967).

Reversed and remanded for a new trial.

*Stuart M. Cowan* (*Greenstein & Cowan* of counsel) for defendant-appellant.

*Patrick Yim,* Deputy Prosecuting Attorney, City & County of Honolulu (*Barry Chung,* Prosecuting Attorney, with him on the brief), for plaintiff-appellee.

---

DISSENTING OPINION OF KABUTAN, CIRCUIT JUDGE

I respectfully dissent.

It seems to me that in this case there was clearly probable cause to arrest the defendant, that the incident search was reasonable, not wide-ranging or indiscriminate, and that there is substantial evidence in the record on which to base a finding of guilt beyond a reasonable doubt. I would affirm.

## I. *Probable Cause*

In the case of *State* v. *Texeira,* 50 Haw. 138, 433 P.2d 593 (1967), this court, citing the case of *Carroll* v. *United States,* 267 U.S. 132, 162 (1925), said that officers have

probable cause to make an arrest when the facts and circumstances within their knowledge, both firsthand and from trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a crime is being committed. In this case, the officer ordering the arrest knew of the arrestee's past record of narcotics activities, knew and had reason to believe the trustworthiness of the information received from his informant, and did observe from his vantage point just prior to the arrest the activities of the arrestee which were suspicious and seemed to corroborate the information he had gained from the informant. Furthermore, HRS § 708-5 provides:

§ 708-5 *By Policeman Without Warrant.*

Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense.

Under *Texeira, supra,* and especially in view of the broad language of HRS § 708-5, I think it is clear that the arrest here was lawfully made. Said HRS § 708-5 remains in effect as the law of the jurisdiction, inasmuch as the majority opinion has failed to determine the constitutionality of said provision. Said section continues to be the standard of conduct exacted of all enforcement officers and dictates, amongst other things, their duty and responsibility as officers.

## II. *Constitutionality of the Search*

The search in question here was made without a warrant. However, a warrantless search is allowable under the Constitution if it is incident to a lawful arrest and if the scope of the search is not unconstitutionally broad.

It is true that in *Chimel* v. *California,* 395 U.S. 752 (1969), the United States Supreme Court considerably narrowed the breadth of searches allowable under its prior holding in *Rabinowitz* v. *United States,* 339 U.S. 56 (1950). But the rule that emerges from *Chimel,* in light of the facts of that case, seems to me to be that a warrantless search incident to a lawful arrest must be reasonably limited in scope, not indiscriminate or wide-ranging, and must be adapted to the goals of protecting the arresting officer and preserving evidence of the crime. In *Chimel,* the arresting officers conducted an indiscriminate search of the defendant's entire house and garage, including desk and dresser drawers. That search was obviously too broad and indiscriminate. The search here, on the other hand, meets the test of *Chimel,* since it was very closely confined, involving only the washing machine which was clearly viewable from a public roadway without entry, near which the defendant was standing, and around which the defendant had been carrying on extremely suspicious activities. The search was adapted to the purpose of preserving evidence —contraband material. Furthermore, the search here was substantially contemporaneous with the arrest; and unlike the situation in *Chimel,* the facts here show that the search was made at the scene of the apparent crime and while the crime was being perpetrated, rather than at the defendant's home, as in *Chimel.* For these reasons, I think the search here was reasonable and constitutional.

## III. *Reasonable Doubt*

Accepting all of the competent evidence adduced, I believe the verdict of the trier of fact is substantiated by substantial evidence of guilt beyond a reasonable doubt.

I would affirm.