STATE OF HAWAII, Plaintiff-Appellant, *v.* WALTER LOUIS JOAO, JR., Defendant-Appellee

NO. 5622

MARCH 21, 1975

RICHARDSON, C.J., KOBAYASHI AND
MENOR, JJ., CIRCUIT JUDGE SODETANI IN PLACE
OF OGATA, J., DISQUALIFIED, AND CIRCUIT
JUDGE KATO ASSIGNED BY REASON OF VACANCY

 

OPINION OF THE COURT BY MENOR, J.

The defendant was charged and indicted for the possession of a firearm in violation of HRS §§ 134-7(b) and 134-7(c). The defendant moved to suppress the firearm as evidence against him. The trial court granted his motion, and the State appeals.

Two police officers testified at the suppression hearing. The defendant offered no evidence.

Officer Clarence DeCaires testified that at approximately 2:05 in the morning of June 27, 1973, he and Sergeant Charles Keliikipi were patrolling on Nimitz Highway. At about that time a Corvette automobile overtook their vehicle. Recognizing the driver to be the defendant Joao, Sergeant Keliikipi relayed this information to Officer DeCaires. The latter was immediately interested, for nine days earlier he had been assigned to investigate a traffic accident which had occurred on private property, and in which the defendant was allegedly involved. The officer had been unable to locate the defendant, and this appeared to him to be an excellent opportunity to speak to him regarding the incident. Accordingly, the officers followed and stopped the defendant on Mokauea Street. A male passenger was with the defendant in the right front seat.

After stopping his vehicle in back of the Corvette, Officer DeCaires approached the defendant on the driver's side and asked if he was Walter Joao. The defendant replied that he was and was then asked to produce his driver's license. In response to the officer's request, the defendant leaned forward "as if to get his license from his wallet."

Meanwhile, Sergeant Keliikipi was just getting out of the police car. Seeing the defendant bend forward, he called out to Officer DeCaires to have the defendant and his passenger alight from their vehicle. Officer DeCaires ordered them to do so, and after they left their vehicle Sergeant Keliikipi frisked them for weapons. Not finding any weapons on their persons, he allowed Officer DeCaires to continue with his interrogation of the defendant.

While Officer DeCaires was talking to the defendant,

Sergeant Keliikipi scanned the interior of the Corvette from both sides of the vehicle with the aid of his flashlight. While so doing, he noticed the butt end of a pistol on the floor sticking out from beneath the driver's seat. He then opened the car door and took possession of the firearm.

The initial stop in this case was proper. *Cf. State v. Tsukiyama,* 56 Haw. 8, 525 P.2d 1099 (1974). *Compare, United States v. Ward,* 488 F.2d 162 (9th Cir. 1973); *People v. Parisi,* 393 Mich. 31, 222 N.W.2d 757 (1974). Officer De-Caires had a perfectly legitimate reason for stopping the defendant in the first instance. He had been assigned to question him relative to a traffic accident which had occurred previously. However, the officer had been unable to carry out his assignment because of his inability to locate the defendant earlier. Had the stop been limited simply to afford the officer the opportunity to arrange for an interview with the defendant at a more reasonable hour and location, there could have been no legal flaw in the police procedure.

Beyond that the intrusion became unreasonable. The officers were without legal justification to require the defendant and his passenger to leave their vehicle. This was an unlawful seizure of their persons and as such was constitutionally proscribed. *Adams v. Williams,* 407 U.S. 143 (1972); *Terry v. Ohio,* 392 U.S. 1 (1968); *Sibron v. New York,* 392 U.S. 40 (1968); *United States v. Cupps,* 503 F.2d 277 (6th Cir. 1974). *Cf. State v. Tsukiyama, supra.*

In *United States v. Cupps, supra,* the federal appellate court was faced with an identical situation. There the defendant had been stopped by police, presumably to enable them to make a statutory inspection of his operator's license. The defendant did produce his license for inspection but was then ordered out of his vehicle. When he complied, a pistol lying on the front seat where one of the defendant's legs had been resting came into view. The federal court considered the problem thusly:

> The case before us . . . does not involve the search of an automobile. The evidence is uncontroverted that the gun became visible to the police only after Cupps was ordered out of the automobile. If the police were rightfully

in the position from which they observed the weapon, the plain view exception would have been applicable and they could have seized the gun without a warrant. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The question which is presented, then, is whether, in ordering Cupps out of the car, the police exceeded what we assume, *arguendo,* was their lawful authority to stop him for the purpose of examining his driver's license. In the absence of consent, this action was a·seizure under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). [503 F.2d at 281]

On the facts before it the federal court found that the officers had exceeded the scope of their authority when they ordered the defendant out of his car, and that, therefore, the plain view doctrine was inapplicable.

The focus in these situations must be, whether the officers had constitutional grounds for the seizure of the accused. *Adams v. Williams, supra; Terry v. Ohio, supra* at 32-33 (concurring opinion of Harlan, J.). If the seizure of the person was unjustified, any evidence recovered as a result thereof is tainted and must be suppressed. *Wong Sun v. United States,* 371 U.S. 471 (1963); *United States v. Ward, supra.*

In the case before us, it was only by virtue of the unlawful conduct of the police officers that the weapon became visible to the police officers. They were without legitimate justification to require the defendant and his passenger to leave their vehicle, as a consequence of which the firearm came into view.

The State nevertheless argues that under the circumstances, the conduct of the officers following the initial stop was reasonable and proper. The prosecution points to the testimony of Sergeant Keliikipi that he instructed Officer DeCaires to order the occupants to leave their vehicle when he saw the defendant leaning forward because "at that time my reasoning was that he could either be bending forward to allow him to reach his rear pocket or bending forward to reach under the front seat." Sergeant Keliikipi had also testified

that he considered the defendant dangerous; that he was in possession of information which led him to believe that the defendant was likely to be carrying a firearm. When questioned on this particular point, the officer testified:

Well, I had learned that he was involved in shaking down bars, which included the use of firearms as a means of persuasion, and that at other times other characters on the road were looking for him, and it was felt that he would be carrying firearms for his protection also.

When pressed for a specific incident to support his conclusions, the officer testified that he had heard of the defendant firing a gun at Ala Moana a year previous to the stop. What the circumstances of this particular shooting incident were is not shown by the record.

Obviously, the hearsay knowledge of the police sergeant in this instance regarding the defendant's alleged propensity for carrying and using a firearm could not have afforded an independent basis for the stop and subsequent frisk of the defendant. *See State v. Joao*, 55 Haw. 601, 525 P.2d 580 (1974); *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972). The officers themselves recognized this. No crime was being committed in their presence. Neither did they have articulable grounds to believe that the defendant was committing or had committed an offense. On the contrary, both officers testified that the initial stop was simply to afford Officer DeCaires the opportunity to inquire into the defendant's alleged involvement in a traffic accident which had occurred earlier on private property.

The officers did not find it necessary to order the occupants of the Corvette to leave the vehicle immediately after the initial stop. Their own conduct at that point negated any fear they might have had for their own safety. It was the conduct of the defendant in bending forward that triggered the ensuing police action. Yet, this movement on the part of the defendant within his vehicle was in response to an officer's request for the production of his driver's license. To Officer DeCaires who was in a position to make a reasoned judgment as to the nature of the defendant's conduct, the act of the defendant in leaning forward gave him no cause for

alarm. He viewed the movement as being consistent with the conduct of the ordinary motorist reaching for his driver's license. He did not consider himself threatened by it. He obviously was satisfied that no crime was being committed in his presence. It was Sergeant Keliikipi, whose view and knowledge of what was transpiring between Officer DeCaires and the defendant was severely limited, who gave the order for the seizure of the defendant and his passenger. This was an unwarranted intrusion upon their liberty.

We have already said that to determine probable cause for an arrest or search the objective standard is to be applied. *State v. Delmondo,* 54 Haw. 552, 512 P.2d 551 (1973). To determine the reasonableness of a restraint upon the liberty of a citizen, short of an arrest, the objective standard is likewise to be utilized. *State v. Tsukiyama, supra.* The test in these situations must be, whether the facts known to the officer, judged against this objective standard, would warrant a man of reasonable caution to believe that criminal activity was afoot, that the perpetrator was then armed and dangerous, and that the action taken was appropriate. *State v. Joao, supra; State v. Onishi, supra.* We are constrained to hold that when measured by this standard, the seizure of the defendant's person when he was ordered to leave his car was completely without lawful justification.

The State's reliance upon *State v. Hanawahine,* 50 Haw. 461, 443 P.2d 149 (1968) and *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971) is misplaced. They are readily distinguishable. In *Hanawahine* the defendant driver was stopped by the police for driving over the speed limit. While waiting for the vehicle's registration papers to be produced, an officer scanned the interior of the automobile with the aid of his flashlight and saw the butt of an automatic pistol on the rear floor of the vehicle. We held that the plain view doctrine warranted the denial of the defendants' motion to suppress. *See Coolidge v. New Hampshire,* 403 U.S. 443 (1971). In *Goudy,* as in this case, a pistol was discovered when the officers ordered Goudy who was sitting on the passenger side of the front seat out of the vehicle. In *Goudy,* however, the stop was triggered by an anonymous telephone call advising

the police of an imminent illegal transaction in firearms and jewelry. Personal observations of the officers substantially corroborated the information received in the telephone call. Added to these circumstances was the fact that as the officers approached the vehicle which they had ordered to a stop, they saw the butt end of a rifle sticking out from a case on the back seat of the automobile. These circumstances furnished sufficient justification for ordering the defendant out of the vehicle, as a result of which the pistol came into view. *See Carpenter v. Sigler*, 419 F.2d 169 (8th Cir. 1969).

The State's contention that the defendant lacked standing to challenge the legality of the seizure of the firearm because he intended to rely upon the defense of entrapment is without merit. In *State v. Dias*, 52 Haw. 100, 470 P.2d 510 (1970), we said:

> The short answer to the question of standing in this case is that the state cannot charge a person with possession and then deny that person his remedy at law to object to the search and seizure of that which the state says is his. The state cannot have it both ways. [52 Haw. at 105, 470 P.2d at 513]

The order of suppression of the court below is affirmed.

*Larry L. Zenker*, Deputy Prosecuting Attorney *(Barry Chung*, Prosecuting Attorney, and *Douglas L. Halsted*, Deputy Prosecuting Attorney, with him on the briefs) for plaintiff-appellant.

*Renee M. L. Yuen*, Deputy Public Defender *(Neal K. Okabayashi*, Deputy Public Defender, with her on the brief; *Donald K. Tsukiyama*, Public Defender, of counsel) for defendant-appellee.

CONCURRING AND DISSENTING OPINION OF
RICHARDSON, C.J., WITH WHOM KATO,
CIRCUIT JUDGE, JOINS

I concur in the majority's holdings that, one, the defendant had standing to raise the constitutional search and seizure issues, and two, the initial stop of the defendant's vehicle was proper.

I dissent on the issue of whether the ordering of the defendant out of his car constituted an illegal seizure in violation of either the United States or Hawaii Constitutions. The validity of the order out depended on the circumstances, and on the actions of the defendant after the car was stopped.

*State v. Onishi,* 53 Haw. 593 at 599-600, 499 P.2d 657, 661 (1972), set forth the following standards for a protective search by police officers:

> For police officers to conduct a valid stop and frisk, they must have observed specific conduct on the part of the person whom they are about to frisk, or have reliable information from which they may reasonably infer that criminal activity is afoot, and that the person is armed and presently dangerous.

See also *State v. Joao,* 55 Haw. 604, 606, 525 P.2d 580, 582 (1974); *Terry v. Ohio,* 392 U.S. 1, 21 (1968). There are thus two substantive requirements and an evidentiary requirement. Reliable information is more than inarticulate hunch, and reasonableness is to be judged by an objective standard. *State v. Onishi,* 53 Haw. 593, 596, 499 P.2d 657, 659 (1972); *State v. Tsukiyama,* 56 Haw. 8, 525 P.2d 1099 (1974); *Cf. State v. Delmondo,* 54 Haw. 352, 512 P.2d 551 (1973); *State v. Goudy,* 52 Haw. 497, 501, 479 P.2d 800, 803 (1971).

After the car was stopped, Sergeant Keliikipi did have reliable information from which he could reasonably infer that the defendant was armed and dangerous. From conversations with fellow officers who had been conducting surveillance of the defendant, the sergeant knew that the defendant was involved in shaking down bars and that such activity involved the use of firearms "as a means of persuasion." Through fellow officers the sergeant also knew that the defendant might be carrying weapons as protection against unnamed third parties. It was also a matter of public record that earlier that year the defendant had been indicted for carrying a pistol, although the discovery of the weapon in that case was subsequently held illegal. *State v. Joao, supra.* Finally, the sergeant was aware of a specific incident a year earlier, in which the defendant had fired a gun; charges were not brought in that case, but the essential point is that the

sergeant knew, on the basis of that specific incident, that the defendant had carried a gun *and had used it* at least once in the recent past.

The reliability of the police officer's information in a stop and frisk situation is to be judged on a case by case basis. As we said in *State v. Joao*, 55 Haw. 604, 607, 525 P.2d 580, 583 (1974):

> In every case, it is for the court to assess the reliability of the information received, considering the totality of the circumstances, including the source and the nature and substance of the information itself. To enable the court to judge objectively the reasonableness of the officer's conduct, it must have before it specific and articulable facts from which to make this determination. (Citation omitted.)

It must also be remembered that in the protective search during a street encounter we do not require the level of evidence to support probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1 (1968). Neither is a policeman, or any other reasonable man, required to conduct his business solely on the basis of evidence admissible in court; hearsay may be relied on, depending on the circumstances. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *State v. Joao, supra.*

In this case, the substance of the information was highly alarming — the defendant was armed, and when confronted with such alarming information the reasonable man will become more alert, whether the source of the information is hearsay or direct observation. Furthermore, the hearsay elements in this case came from fellow officers charged with observing the defendant, not from an unnamed, unidentified civilian informant as in *State v. Joao, supra*. The sergeant was reasonable in believing that the defendant might be armed. Indeed, he would have been unreasonable if he had not suspected that the defendant might have been armed.

Furthermore, the specificity of the last item of information, the shooting incident, distinguishes this case from *State v. Joao, supra*, in which information that the defendant was armed was held to be unreliable because it was without "adequate anchor, as to time and place."

The sergeant also had reason to suspect that criminal activity was afoot. Because the sergeant acted on his own direct observations, which he articulated and specified at the hearing on the motion; it is obvious that the evidentiary requirement of reliable information as stated in *Onishi* and *Joao, supra,* was met. The sergeant also could have reasonably inferred that such dangerous criminal activity was possible. It does not matter that the officers did not immediately order the defendant out on stopping his car, or approach his car with drawn guns. Police are not required to take the most extreme precautions every time they approach someone they might suspect of being armed. Given that the sergeant could reasonably infer that the defendant was armed, it was reasonable for the sergeant to interpret the defendant's bending forward as threatening. The bending forward was sufficient stimulus in this case to provoke a protective search. While the bending forward was an admittedly ambiguous act because it was consistent with both reaching for a gun and reaching for a wallet, the latter being the fact, it is unreasonable to ask the policeman faced with an instant decision to have faith in the option that puts his life in greater danger.[1]

Whether Officer DeCaires, who was at the car window where the defendant was seated, also felt threatened is of some weight in determining the reasonableness of the order out, but the record is silent on whether Officer DeCaires also had reason to know that the defendant was armed, and this must be contrasted with the sergeant's reasonable apprehension, plus his twelve and one-half years of police experience, experience which could have made the sergeant more alert to dangerous possibilities.

I conclude that the ordering of the defendant out of his car was not an illegal seizure under either the United States or

---

[1] On the dangers police face, see State v. Goudy, 52 Haw. 497, 504, 479 P.2d 800, 804 (1971), quoting *Terry,* 392 U.S. 1, 23-24 (1968).

Furthermore, we must bear in mind Chief Justice Warren's warning in Terry v. Ohio, *supra* at 13-14 as to the limits of the exclusionary rule. The rule will only be effective in modifying police behavior to the extent that said behavior is motivated by a desire to obtain a conviction. To the extent that other motivation exists, such as the desire to absolutely eliminate any danger to the officer's person, the police will continue the practice.

Hawaii Constitutions.

Given that the order out was reasonable, it cannot be said that the pat down searches of the defendant and his passenger were unreasonable in scope or intensity. The validity of the flashlight inspection depends on whether the initial stop and the order out were proper because those events were necessary to observe the pistol. As was stated in *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1970):

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence to incriminate the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, *or some other legitimate reason for being present unconnected with a search directed against the accused* — and permits the warrantless seizure (emphasis added).

In *State v. Hanawahine*, 50 Haw. 461, 443 P.2d 149 (1968), this court held that a flashlight inspection of a vehicle incident to a lawful arrest, in that case a traffic arrest based on probable cause instead of a warrant, did not violate the constitutional prohibitions against illegal searches and seizures. Indeed, *Hanawahine* held that the initial sighting of the pistol during the flashlight scanning was not even a search. 50 Haw. 461 at 465, 443 P.2d 149 at 152 (1968). *Hanawahine* is indistinguishable from this case because the key point is not the nature of the prior intrusion, a traffic arrest in *Hanawahine* and routine investigation plus a legitimate protective search in this case. The key point is that in both that case and this one the police were justified in their initial intrusion. They were where they had a right to be. Given what I view as the propriety of both the initial stop and the order out, the flashlight inspection of the car interior by an officer who remained completely outside the vehicle, and the seizure of anything in plain view thereof, did not violate the search and seizure provisions of either the United States or Hawaii Constitutions.

I would reverse.