169 P.3d 981

STATE of Hawai'i, Plaintiff–Appellant,

v.

Sola KOLIA, aka Sola Kolio,
Defendant–Appellee.

No. 28071.

Intermediate Court of Appeals of Hawai'i.

Aug. 16, 2007.

Certiorari Rejected Jan. 29, 2008.

Brian R. Vincent, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Karen T. Nakasone, Deputy Public Defender, on the briefs, for Defendant–Appellee.

RECKTENWALD, C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

One morning in June, 2004, a Honolulu police officer encountered Defendant–Appellee Sola Kolia (Kolia) drinking an alcoholic beverage in public. The encounter led to Kolia fleeing on foot, with police in pursuit. Kolia had a "fanny pack" on his waist, and during the chase he made three unsuccessful attempts to throw the fanny pack away. On the fourth try, he finally succeeded in tossing the fanny pack onto the roof of a building. Kolia tried to continue his escape, but was apprehended by police. While Kolia was in custody, police asked him about the fanny pack and he denied that it was his. Police then searched the fanny pack and recovered drugs and drug paraphernalia.

Kolia was charged with two counts of Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statutes (HRS) § 712–1243 (1993), Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (1993), Criminal Littering, HRS § 708–829 (1993), and Resisting Arrest, HRS § 710–1026(1)(a) (1993). Before trial, he moved to suppress evidence recovered from the fanny pack, as well as his statements to police. The Circuit Court of the First Circuit[1] (circuit court) granted the motion, and filed the Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Statements and Evidence (Order) on July 17, 2006. The State of Hawai'i (the State) appeals.

We conclude that Kolia relinquished any expectation of privacy that he had in the fanny pack when he voluntarily discarded it while fleeing from the police. Accordingly, we find that police did not violate Kolia's rights under the Fourth Amendment of the United States Constitution or Article I, Section 7 of the Hawai'i Constitution when they searched the pack without a warrant. However, we find that police should have advised Kolia of his *Miranda* rights before questioning him. Thus, we vacate in part and affirm in part the circuit court's Order.

**BACKGROUND**

On June 1, 2004, at 6:54 a.m., Honolulu Police Officer Jeffery Nagai (Officer Nagai) observed Kolia drinking an alcoholic beverage in public. When Officer Nagai approached Kolia and reached for the alcoholic beverage, Kolia suddenly picked up the bottle and threw it into the Nu'uanu stream. In response, Officer Nagai attempted to arrest Kolia and to put handcuffs on him. However, after Officer Nagai secured one of Kolia's arms, Kolia turned, and with his free hand pushed the officer to the ground. With the handcuffs still attached to one of his wrists, Kolia ran away from Officer Nagai. At this point, Officer Nagai saw Officer Rick Barnett (Officer Barnett) in Barnett's police vehicle and told him to pursue Kolia as Nagai proceeded on foot. Both officers pursued Kolia to Kukui Gardens housing (Kukui Gardens).

Officer Nagai testified that when Kolia ran into Kukui Gardens, Nagai lost sight of him for about five minutes. Meanwhile, Officer Barnett, now on foot, pursued Kolia into the courtyard of one of the buildings. Officer Barnett observed that Kolia had stopped and was standing in front of one of the corner apartments with his fanny pack in his hand. Officer Barnett then ordered Kolia to "surrender."

Despite Officer Barnett's order, Kolia attempted to throw his fanny pack into an outdoor closet, but was unable to do so. Kolia then tried to throw the fanny pack "over his head onto an apartment landing," but ended up dropping the fanny pack before he could throw it. After this second unsuccessful attempt, Kolia immediately picked up the fanny pack and continued to back away from Officer Barnett.

---

1. The Honorable Michael A. Town presided.

Kolia then turned away from Officer Barnett and tried to throw the fanny pack back at the apartment, yet the bag missed and landed a "few feet in front of him." By this time Officer Barnett was within a few feet of Kolia and attempted to spray Kolia with his "OC spray." However, the spray deflected into Officer Barnett's eyes and had no effect on Kolia.

Kolia again picked up the fanny pack and ran toward another building. In his fourth and final attempt to discard it, Kolia "launched ... the fanny pack overhand,(similar to a hook shot), onto the roof of building 33['s] laundry room."[2]

Officer Nagai subdued Kolia and arrested him. Kolia was later sent to a hospital for treatment. Following Kolia's arrest, an officer used a ladder to retrieve the fanny pack from the roof, which, Officer Nagai testified, "no one could get up onto ... [because] it was too high."

Once the fanny pack was retrieved, Officers Nagai and Barnett went to the hospital to determine "whose it was." Without advising Kolia of his *Miranda* rights, Officer Nagai asked him, "Is this your bag?" Kolia responded, "No." Officer Nagai also testified that as the officers turned to go, Kolia stated "that's not mine." After Kolia's denial of ownership, the officers opened the fanny pack to do an inventory search. Officers Nagai and Barnett discovered drugs and drug paraphernalia that contained crystal methamphetamine residue inside the fanny pack. Kolia was then arrested for promoting a dangerous drug in the third degree.

Kolia moved to suppress, and the circuit court held a hearing on the motion. The main issue during the hearing was whether the fanny pack was abandoned. After reading what it believed to be the "controlling" case, *State v. Mahone*, 67 Haw. 644, 701 P.2d 171 (1985), the circuit court stated:

> [I] think I need to grant the motion in this case. [I] do it by necessity. The burden's on the State. I'm not convinced that this was abandoned, because unlike Mahoney [sic], this was seen by law enforcement, the

fannypack A, on Mr. Kolia; and B, there was a chase. It certainly was a furtive gesture. And if that's enough to abandon it, then so be it. But I don't think under Mahoney [sic] it is. And that the failure to Mirandize him technically keeps that part out.

> So I need to grant it. I'm not comfortable doing it. But I think it's required based on my reading of the law and the facts.

Thus, in issuing its oral ruling on the motion, the circuit court reasoned that the fanny pack was not abandoned because the officers saw the fanny pack, there was a chase involving police and Kolia, and because Kolia's acts were "furtive."

In the written Order, the court held in pertinent part:

*FINDINGS OF FACT*

. . . .

17. Defendant was in custody and interrogated without first [being] given his Miranda Rights.

. . . .

21. The fanny pack was not abandoned.

22. Barnett would not have opened the fanny pack without Defendant first disclaiming ownership of the bag.

23. Police lacked probable cause to open the fanny pack.

*CONCLUSIONS OF LAW*

. . . .

6. In *State v. Mahone*, 67 Haw. 644, 701 P.2d 171 (1985), the Hawaii Supreme Court found that "abandonment is primarily a question of intent and intent may be inferred from words spoken, acts done, and other objective facts" and "verbal disclaimer of ownership of the thing being searched constitutes abandonment."

7. Defendant's verbal disclaimer of ownership of the fanny pack was illegally obtained because he was subjected to custodial interrogation without first being advised of his Miranda Rights.

---

2. This description came from Officer Barnett's "follow up" report, which was stipulated into

evidence following the circuit court's hearing on Kolia's motion to suppress.

8. The fruit of the poisonous tree doctrine requires that the evidence discovered as a result of the illegality of the police search to be suppressed.

9. The police would not have otherwise obtained the evidence without the illegality.

## POINTS ON APPEAL

■ The State contends that the circuit court erred in suppressing the contents of the fanny pack, asserting that the "defendant lacks standing to challenge the search of the fanny pack because [Kolia] had no objectively reasonable expectation of privacy in the fanny pack."[3] Specifically, the State argues that: (1) the "Defendant has the burden of proof to establish standing," (2) the "Defendant had no expectation of privacy in the fanny pack which defendant intentionally abandoned during the course of his flight from arrest," and (3) "Officer Nagai's inquiry as to the ownership of the fanny pack was not likely to elicit an incriminating response."

Kolia contends that the circuit court correctly concluded, in Finding of Fact No. 17 and Conclusion of Law No. 7, that Kolia was subject to a custodial interrogation. Additionally, Kolia asserts that he did not abandon the fanny pack and retained a legitimate expectation of privacy. Finally, he contends that the circuit court correctly concluded in Conclusion of Law Nos. 8 and 9, that the contents of the fanny pack must be suppressed as fruit of the poisonous tree.

## STANDARD OF REVIEW

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite

and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/wrong standard. Furthermore, ... the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence. *State v. Balberdi*, 90 Hawai'i 16, 20–21, 975 P.2d 773, 777–78 (App.1999) (quoting *State v. Anderson*, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997)).

We "review the circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was right or wrong." *State v. Eleneki*, 106 Hawai'i 177, 180, 102 P.3d 1075, 1077 (2004) (emphasis in original, citation omitted).

## DISCUSSION

### I. Kolia Did Not Retain a Reasonable Expectation of Privacy When He Abandoned His Fanny Pack

Kolia contends that the trial court correctly found that he did not abandon his fanny pack because he "retained a legitimate expectation of privacy in the [fanny pack]." Specifically, Kolia states that the "deliberate placement of his [fanny pack] in a physically inaccessible area on private property, [is] indicative of an intent to preserve the item for safekeeping, rather than abandoning it." He further asserts that "because [he] did not abandon the [fanny pack], he retained a legitimate expectation of privacy in the [fanny pack] after placing it on the roof."

■ Under Hawai'i and federal constitutional law, when a defendant "abandons" property, he or she relinquishes any reasonable expectation of privacy so that a warrant-

---

3. In its brief, the State asserts that because Kolia abandoned the fanny pack, he does not have "standing" to object to the police search of it. However, the Hawai'i Supreme Court has stated that "[a] criminal defendant always has standing to challenge the admission of evidence introduced by the state." *State v. Taua*, 98 Hawai'i 426, 436 n. 19, 49 P.3d 1227, 1237 n. 19 (2002)(quoting *State v. Tanner*, 304 Or. 312, 745 P.2d 757, 759 (1987)). Accordingly, we will not analyze this issue in terms of "standing."

less search and seizure by government officials does not violate the Fourth Amendment of the United States Constitution or Article I, Section 7 of the Hawai'i Constitution. *See United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir.1997) (quoting *United States v. Hoey,* 983 F.2d 890, 892–93 (8th Cir.1993)); *State v. Ching,* 67 Haw. 107, 110, 678 P.2d 1088, 1092 (1984). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." *Tugwell,* 125 F.3d at 602 (citation and internal quotation marks omitted).

■ The primary purpose of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Hawai'i Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by the government. *State v. Taua,* 98 Hawai'i 426, 436, 49 P.3d 1227, 1237 (2002). Areas where an accused has a reasonable expectation of privacy may not be searched by government officials without a warrant, unless some exception to the warrant requirement applies. *State v. Cuntapay,* 104 Hawai'i 109, 117, 85 P.3d 634, 642 (2004). Thus, any evidence seized by government officials in violation of these constitutional provisions will be inadmissible. *State v. Dias,* 52 Haw. 100, 104, 470 P.2d 510, 513 (1970). A defendant's "ability to invoke the constitutional protections against unreasonable search and seizure depends upon whether he had a legitimate expectation of privacy in the invaded space." *State v. Scanlan,* 65 Haw. 159, 161, 649 P.2d 737, 738 (1982) (citing *Katz v. United States,* 389 U.S. 347, 360–61, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967)). A "legitimate expectation of privacy by definition means more than a subjective expectation of not being discovered." *State*

*v. Abordo,* 61 Haw. 117, 122, 596 P.2d 773, 776 (1979).

■ In ascertaining whether an individual has a reasonable expectation of privacy, the Hawai'i Supreme Court utilizes a two-part test derived from *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring). *Taua,* 98 Hawai'i at 436, 49 P.3d at 1237. First, the defendant must exhibit an actual subjective expectation of privacy, and second, that expectation must be one that society would recognize as objectively reasonable. *Id.* at 436, 49 P.3d at 1237 (citing *State v. Lopez,* 78 Hawai'i 433, 441–42, 896 P.2d 889, 897–98 (1995)). Furthermore, the "defendant's claim to privacy can only be sustained if it is reasonable in light of all the surrounding circumstances...." *Scanlan,* 65 Haw. at 161, 649 P.2d at 738.

In determining whether a defendant had a reasonable expectation of privacy, the Hawai'i Supreme Court has considered "the nature of the place involved, the interest asserted by the defendant in the area searched, and the precautions taken by the defendant to insure his privacy."[4] *Id.* at 161, 649 P.2d at 738. Furthermore, the court has stated "[e]very individual has expectations of privacy with regard to his person wherever he may go, be it a public park or a private place; yet this is not so with regard to places where an individual happens to be. The place must be of such a character as to give rise reasonably to these expectations of privacy." *Dias,* 52 Haw. at 106–07, 470 P.2d at 514 (holding that the defendants had a reasonable expectation of privacy in a passageway, located on private property, because the group met and socialized there).

■ When an individual voluntarily abandons evidence, that individual loses any legitimate expectation of privacy in the prop-

---

4. The Hawai'i Supreme Court has identified various criteria to determine whether a reasonable expectation of privacy exists. In some cases the court has focused on the "type and character of government intrusion," *State v. Bonnell,* 75 Haw. 124, 143, 856 P.2d 1265, 1275 (1993), or "the position of the government officer," *State v. Kender,* 60 Haw. 301, 304, 588 P.2d 447, 450 (1979), rather than the "interest asserted by the defendant in the searched area." *Scanlan,* 65 Haw. at

161, 649 P.2d at 739. However, all three criteria examine essentially the same thing: whether the defendant had an interest in the area searched such that society would deem an intrusion into that area by government officials to be a violation of the defendant's right to privacy. *See Bonnell,* 75 Haw. at 145–46, 856 P.2d at 1276–1277; *Kender,* 60 Haw. at 304, 588 P.2d at 450; *Scanlan,* 65 Haw. at 161, 649 P.2d at 739.

erty and thereby disclaims any concern about whether the property or its contents remain private.[5] *See State v. Mahone*, 67 Haw. 644, 648, 701 P.2d 171, 175 (1985) (finding that the defendant did not have a reasonable expectation of privacy when he disclaimed possessing or owning a bag containing drugs, which he left in a fellow defendant's apartment) (citing *United States v. Veatch*, 674 F.2d 1217, 1220 (9th Cir.1981)). Abandonment is primarily a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." *Mahone*, 67 Haw. at 648, 701 P.2d at 175 (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)).

## A. Reasonable Expectation of Privacy

After considering the surrounding circumstances of this case, we conclude that Kolia did not exhibit a subjective expectation of privacy. Even assuming he did, Kolia's expectation would not be one that society would recognize as objectively reasonable. *See Taua*, 98 Hawai'i at 436, 49 P.3d at 1237.

▓▓▓▓ Kolia's actions were not those of one who has an actual, subjective, expectation of privacy. Rather than attempting to keep the fanny pack's contents private, the facts show that Kolia's intent in discarding the fanny pack was to distance himself from it and its contents. Knowing that Officers Barnett and Nagai were pursuing him, Kolia removed the fanny pack from his waist and attempted four different times to discard it. While Officer Barnett was watching and commanding him to surrender, Kolia tried to throw the fanny pack into an outdoor utility closet, over his head onto an apartment landing, at "another building," and finally he "launched the ... fanny pack overhand, (similar to a hook shot), onto the roof of building 33['s] laundry room." Then, perhaps most telling, after throwing the fanny pack onto the roof, Kolia began to distance himself from where the bag had landed by attempting to move away. Therefore, viewing all of the surrounding circumstances and Kolia's actions, we conclude that Kolia did not exhibit an intent to maintain his privacy interest in the fanny pack.

Kolia claims that "[his] deliberate placement of his [fanny pack] in a physically inaccessible area on private property, [is] indicative of an intent to preserve the item for safekeeping, rather than abandoning it." However, prior to Kolia's "placement" of the fanny pack on the roof of the laundry room, Kolia tried to throw his fanny pack into areas where either the rightful occupants, their guests, or caretakers could have retrieved the fanny pack, i.e., the utility closet, the apartment building's landing, and "at another building." Thus his acts show an intent to discard the fanny pack so that he would not be apprehended while in possession of illegal substances.

▓▓▓▓ Even assuming Kolia exhibited an expectation of privacy, his subjective expectation would not be one that society would recognize as legitimate and reasonable. As the Hawai'i Supreme Court stated in *Abordo*, 61 Haw. at 122, 596 P.2d at 776, a "legitimate expectation of privacy by definition means more than a subjective expectation of not being discovered." Using the Hawai'i Supreme Court's criteria for determining whether an expectation of privacy is reasonable, neither the nature of the place where Kolia threw the fanny pack, his asserted interest in the area searched, nor Kolia's precautions to insure his privacy demonstrate that he had a reasonable expectation of privacy in the fanny pack or its contents. *See Scanlan*, 65 Haw. at 161, 649 P.2d at 738.

The nature of the laundry room roof where Kolia threw the fanny pack does not support Kolia's assertion that he had a reasonable expectation of privacy. The record shows

---

5. Because Kolia was drinking in public, threw his bottle into the stream, resisted arrest, and then fled on foot, Officer Nagai had probable cause to approach, attempt to arrest, and then pursue Kolia. Therefore, the issue of involuntary abandonment, resulting from police illegality, is not implicated here. *See State v. Evans*, 159 Wash.2d 402, 150 P.3d 105, 109 (2007) ("Involuntary abandonment occurs when property was abandoned as a result of illegal police behavior."); *State v. Quino*, 74 Haw. 161, 163, 840 P.2d 358, 359 (1992) (refusing to address the issue of abandonment because the police had unlawfully seized the defendant prior to him discarding the proffered evidence).

that the laundry room roof was on private property at a place which was inaccessible except to those who had both the means (such as a ladder) and the right to gain access to the roof. Thus, Kolia himself would have been unable to retrieve the fanny pack without both the permission of the property owners and the proper means to retrieve it.

Furthermore, Kolia failed to establish that he had a privacy interest in Kukui Gardens or the places where he attempted to throw his fanny pack. The record does not indicate that Kolia lived or worked at Kukui Gardens. *See State v. Tanaka*, 67 Haw. 658, 662, 701 P.2d 1274, 1276–77 (1985) (holding that police violated Article I, Section 7 of the Hawai'i Constitution when police conducted a warrantless search of the garbage cans at the defendants' homes and places of employment). Nor was there any evidence introduced that Kolia even socialized at Kukui Gardens. *See Dias*, 52 Haw. at 106–07, 470 P.2d at 514 (holding that the defendant had a reasonable expectation of privacy in the area where he and others socialized). Furthermore, the places where Kolia attempted to discard his fanny pack were all owned or controlled by other private parties, and had the police not retrieved it, the fanny pack containing drugs and drug paraphernalia would have eventually been discovered by the rightful occupants or caretakers of the property. *See Scanlan*, 65 Haw. at 160, 649 P.2d at 738 (stating that the "defendant does not claim a possessory or property interest to the items seized, nor does he claim to have the same interest to the premises" where the evidence was found).

Finally, Kolia took no precautions to maintain his right to privacy in the fanny pack.

All of the places where Kolia attempted to discard the fanny pack were accessible to, and in plain view of, the rightful occupants or caretakers of Kukui Gardens.

█ In sum, we conclude that when Kolia voluntarily threw his fanny pack onto the roof top, he abandoned his expectation of privacy.[6]

### B. Abandonment

█ In *State v. Joyner*, 66 Haw. 543, 669 P.2d 152 (1983), the Hawai'i Supreme Court examined whether the defendant's silence, when police asked the defendant and three other men if a gym bag found a couple feet from the defendant belonged to any of them, constituted abandonment. In holding that the defendant's silence did not constitute abandonment, the court stated "[t]he defendant did not actively discard the bag *or* expressly disclaim its ownership. . . ." *Id.* at 545, 669 P.2d at 153 (emphasis added). Thus, either an express disclaimer of ownership, or active discarding of property, will constitute abandonment.[7]

Two years later in *Mahone*, the Hawai'i Supreme Court held that a defendant's express disclaimer of possessing or owning a bag constituted abandonment. 67 Haw. at 648, 701 P.2d at 175. In analyzing the issue of abandonment, the Hawai'i Supreme Court drew upon the decisions of the federal courts that had considered the issue. The court stated "we agree with the federal courts and hold that under the [Hawai'i] Constitution, Article I, Section 7, the same rule of law is applicable to the facts of this case." *Id.* at 648, 701 P.2d at 175.

While the Hawai'i Supreme Court has not specifically considered a case in which a de-

---

6. Because we have concluded that Kolia did not have a reasonable expectation of privacy under either the Fourth Amendment of the United States Constitution, or under Article I, Section 7 of the Hawai'i Constitution, the issue of whether the officers' inventory search of the fanny pack was "fruit of the poisonous tree" from Kolia's illegally obtained statements is moot. As the court in *United States v. Paradis*, 351 F.3d 21, 32 (1st Cir.2003), stated: "[t]he fruit of the poisonous tree analysis proceeds only after a Fourth Amendment interest has been established. If there is no privacy interest to be protected under the Fourth Amendment, there is no occasion to

apply the fruits doctrine." *Id.* at 32 (citing 5 W. LaFave, *Search and Seizure* § 11.4 (3rd ed.1996)).

7. In *Tanaka*, the Hawai'i Supreme Court held that the defendants had a privacy interest in "their trash bags" located on "their property." 67 Haw. at 662, 701 P.2d at 1276–277. However, the facts of that case are materially different from this case because the record does not indicate that Kolia lived or worked in Kukui Gardens.

fendant discarded property while fleeing from police, a number of federal courts have considered the issue and concluded that the defendant abandoned the property. In *United States v. Taylor*, 462 F.3d 1023 (8th Cir. 2006), the court found that the defendant had abandoned a bag and gun when, while he was being pursued by police, he threw the bag into one backyard and his gun into another. In *United States v. Williams*, 569 F.2d 823, 825 (5th Cir.1978), the court found that the defendant had abandoned a tractor trailer containing marijuana when he unhitched it from his truck and left it in a rest area on the side of the road in an attempt to elude federal agents. In *United States v. Walker*, 879 F.Supp. 1087, 1091 (D.Kan.1995), the court found that the defendant abandoned a pager and a plastic baggie containing cocaine which he discarded while being chased by police.

Additionally, many state courts have held that evidence is abandoned when the defendant actively discards it while fleeing from police. In *People v. Kirchoff*, 74 Mich.App. 641, 254 N.W.2d 793 (1977), the Michigan Court of Appeals, applying an approach similar to that used by the Hawai'i Supreme Court, held that the defendant's "knapsack" was abandoned when he threw it between two houses and took a couple of steps away from it before being apprehended by police. *Id.* at 795–96; *see also State v. Wronko*, 26 Ariz.App. 263, 547 P.2d 1063, 1064–65 (1976) (determining that police had the right to examine the contents of a wallet that the defendant threw in the bushes as he was being chased by police; defendant's action constituted abandonment); *Johnson v. People*, 171 Colo. 150, 465 P.2d 128, 129 (1970) (holding that a matchbox containing marijuana was abandoned when the defendant threw it as he was attempting to flee from police); *State v. Perique*, 340 So.2d 1369, 1373 (La. 1976) (holding that evidence in a box the defendant threw into a private home's backyard was abandoned).

Here, the record shows that the circuit court incorrectly applied the applicable legal principles for determining whether Kolia had a reasonable expectation of privacy. Rather than examine whether Kolia exhibited a subjective expectation of privacy which was ob-

jectively reasonable, *see Taua*, 98 Hawai'i at 436, 49 P.3d at 1237, the circuit court focused on whether Kolia discarded the fanny pack because police were pursuing him and his subjective intent in doing so. Specifically, the circuit court indicated in its oral ruling that it was granting the motion to suppress because there was a chase, during which police observed the fanny pack on Kolia, and because Kolia's throwing of the fanny pack was a "furtive gesture."

As the federal and state cases on abandonment show, many abandonment scenarios deal with some sort of pursuit, where the defendant is seen in possession of the property before abandoning it. In *Colbert*, the court stated that "[p]olice pursuit or the existence of a police investigation does not of itself render abandonment involuntary." 474 F.2d at 176 (citations omitted). The *Colbert* court went on to say that "[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* Here, the circuit court appeared to base its decision on Kolia's motivation for discarding the fanny pack, rather than analyzing whether Kolia retained a reasonable expectation of privacy in the fanny pack after he discarded it.

Additionally, the circuit court's focus on the fact that the discarding was "furtive" addresses whether Kolia had a subjective intent to maintain his privacy. The circuit court failed to examine whether Kolia's asserted expectation of privacy in the fanny pack was one which society would recognize as objectively reasonable. *See Taua*, 98 Hawai'i at 436, 49 P.3d at 1237. Thus, the circuit court improperly applied the Hawai'i Supreme Court's expectation of privacy test.

Viewing Kolia's claim to privacy in light of all the surrounding circumstances, and applying the Hawai'i Supreme Court's reasonable expectation of privacy test, we find that the circuit court incorrectly suppressed the evidence found within Kolia's abandoned fanny pack. Accordingly, we vacate those portions

of the circuit court's Order suppressing the evidence recovered from the fanny pack.

## II. Custodial Interrogation

▮ The circuit court found that "[Kolia's] verbal disclaimer of ownership of the fanny pack was illegally obtained because he was subjected to a custodial interrogation without first [being] advised of his *Miranda* Rights." We agree. The record shows that when Honolulu police officers took Kolia to the hospital for treatment, Kolia was in custody because he had been "formally and physically arrested." *State v. Ketchum*, 97 Hawai'i 107, 124, 34 P.3d 1006, 1023 (2001). Furthermore, the "express questioning" of Kolia by police regarding the ownership of the fanny pack constituted interrogation. *State v. Joseph*, 109 Hawai'i 482, 495, 128 P.3d 795, 808 (2006). Because police failed to apprise Kolia of his *Miranda* rights before subjecting him to a custodial interrogation, the circuit court properly suppressed his statements disclaiming the fanny pack. Thus, we affirm that portion of the circuit court's ruling.

## CONCLUSION

We vacate those portions of the July 17, 2006 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Statements and Evidence that suppress the evidence found in Kolia's fanny pack, affirm the suppression of Kolia's statements to police disclaiming ownership of the fanny pack, and remand this case for further proceedings consistent with this opinion.

