**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000464
21-FEB-2023
09:17 AM
Dkt. 80 SO**

NO. CAAP-21-0000464

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
PAULETTE M. PAULICH, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CRIMINAL NO. 3CPC-20-0000623)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Paulette M. **Paulich** appeals from
the "**Judgment** of Conviction and Sentence" entered by the Circuit
Court of the Third Circuit on July 28, 2021.[1]  For the reasons
explained below, we affirm.

On July 16, 2018, Mark **Brown** was driving a motorcycle
when he was hit by a car.  The driver of the car did not stop at
the scene of the collision.  Brown died at the scene.

On May 14, 2019, a grand jury indicted Paulich for
Negligent Homicide in the First Degree in violation of Hawaii
Revised Statutes (**HRS**) § 707-702.5(1) and Accidents Involving
Death or Serious Bodily Injury in violation of HRS § 291C-12.
The State filed a motion to determine voluntariness of various
statements made by Paulich after the accident.  Paulich filed

---

[1]     The Honorable Robert D.S. Kim presided.

three motions to suppress evidence.  The motions were heard on August 2, 2019.  However, the charges against Paulich were dismissed without prejudice because of a violation of Hawaiʻi Rules of Penal Procedure Rule 48.

Charges against Paulich were refiled on July 1, 2020.[2] The State refiled its motion to determine voluntariness, and Paulich refiled her motions to suppress.  The motions were heard on October 27, 2020.  Paulich and the State stipulated to admission of the transcript of the August 2, 2019 hearing from the previous case (which had been conducted by the same judge), and the exhibits from that hearing.

The circuit court granted the State's motion to determine voluntariness and denied Paulich's motions to suppress. On December 2, 2020, the circuit court entered findings of fact, conclusions of law, and two orders.  Paulich does not challenge the circuit court's findings of fact.[3]  Those findings are binding on appeal.  <u>Okada Trucking Co. v. Bd. of Water Supply</u>, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002).

The circuit court found that Hawaiʻi County Police Department (**HCPD**) police officer Kimo **Keliipaakaua** was assigned to investigate the July 16, 2018 accident.  The accident scene was Highway 11, near the 83-mile marker.  HCPD officers Bruce **Parayano** and Jason **Foxworthy** were present when Officer Keliipaakaua arrived at the scene.  A motorcycle was lying in the gravel shoulder on the northbound side of Highway 11.  Brown was also lying on the gravel shoulder, dead.

A black **Cadillac** sedan was found on Highway 11 about a half mile north of the motorcycle and Brown.  There was evidence on the roadway, including a black tire mark and debris trail,

---

[2]     Amended charges were later filed to correct a typographical error.

[3]     The statement of the points of error in Paulich's opening brief does not comply with Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(C). We cannot discern, from Paulich's arguments, that she challenges any of the findings of fact contained in either of the circuit court's orders.

leading to the Cadillac from where the motorcycle and Brown were found.

The Cadillac was parked at an angle on a grass embankment, perpendicular to the roadway. The back end was partially blocking the north-bound lane. The motor was running, the lights were on, all four doors were closed, and three of the doors were locked. There was substantial damage to the front bumper and passenger area. No one was present in the area.

Officer Keliipaakaua looked inside the Cadillac. There was no one inside, but Officer Keliipaakaua saw a purse, clothes, and empty beverage containers. He ran the license plate number and learned that Paulich was a registered co-owner of the Cadillac.

Officer Keliipaakaua entered the Cadillac because it was blocking the roadway and was a traffic hazard, and also to identify who the driver could have been. Inside the purse was a zippered wallet. Officer Keliipaakaua opened the wallet and found a Hawaiʻi identification card bearing Paulich's name. The contents of the wallet and purse were returned to the Cadillac and the vehicle was secured as evidence, which was standard HCPD practice for motor vehicle collisions involving death. Officer Keliipaakaua later obtained warrants to search the Cadillac and the wallet.

After a jury trial, Paulich was found guilty of an included offense, Negligent Homicide in the Second Degree, and of the charged offense Accidents Involving Death or Serious Bodily Injury. The Judgment was entered on July 28, 2021. This appeal followed.

Paulich contends that the circuit court erred by failing to suppress evidence obtained during the warrantless search of her car and wallet, failing to suppress the statements she made to HCPD officers at her residence on the night of the collision, and failing to suppress statements she made at the HCPD Kona station on March 14, 2019, after she was arrested. She

3

also contends that there was insufficient evidence to support the jury's verdict.

**1.** The circuit court denied Paulich's motion to suppress evidence obtained during the warrantless searches of her car and wallet. Paulich does not specify what evidence recovered from her car or wallet was improperly admitted at trial. Her brief mentions "empty containers for alcoholic beverages"[4] and her state identification card,[5] but provides no citations to the record as required by Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(A) and (C). However, we discern from her brief that she appears to challenge the circuit court's conclusions of law (**COL**) nos. 2, 3, 4, 5, 6, and 7. See Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (stating that "noncompliance with Rule 28 does not always result in dismissal of the claims, and this court has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible. This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument.") (cleaned up).

The circuit court's conclusions of law in a pretrial ruling in a criminal case are reviewed under the "right/wrong" standard. State v. Alvarez, 138 Hawaiʻi 173, 181, 378 P.3d 889, 897 (2016).

The circuit court concluded:

> 2. Hawaii has adopted the two-part test that Justice Harlan articulated in his concurring opinion in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576

---

[4] The record does not indicate that empty containers of alcoholic beverages were offered or admitted into evidence. We note that the containers were in plain view — Officer Keliipaakaua testified that he saw the containers when he looked into the Cadillac before entering the vehicle.

[5] The record does not indicate that Paulich's ID card was offered or admitted into evidence. We note that Officer Keliipaakaua obtained Paulich's name by checking her car's license plate, which was in plain view, and that Officer Parayano knew where Paulich lived. Accordingly, the information obtained by the police officers at Paulich's residence later that evening (including observations of her injuries and signs of intoxication) was not the fruit of the warrantless search of Paulich's car or her wallet.

(1967), to determine whether an individual has a reasonable expectation of privacy.  [State v. ]Bonnell, 75 Haw. 124, 139, 856 P.2d 1265, 1273-74.  Under this test: "First, one must exhibit an actual, subjective expectation of privacy. Second, that expectation must be one that society would recognize as objectively reasonable."  Id., [75 Haw. at 139,] 856 P.2d at 1274 (quoting State v. Biggar, 68 Haw. 404, 407, 716 P.2d 493, 495 (1986)).

COL no. 2 was right.

The circuit court concluded:

> 3.    [Paulich]'s actions demonstrated that she did not have the subjective intent to avoid in [sic] public gaze, in that she left her vehicle running, partially blocking the highway, with one of the doors unlocked after it had been involved in a traffic collision involving a fatality.  State v. Quiday, 141 Hawaiʻi 116, 122, 405 P.3d 552, 558, 2017 WL 5591790 (2017).

COL no. 3 was actually a mixed finding of fact and conclusion of law.[6]  A mixed finding of fact and conclusion of law is reviewed under the "clearly erroneous" standard because the determination is dependent on the facts and circumstances of each individual case.  Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).  A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned.  Id.

In State v. Quiday, 141 Hawaiʻi 116, 405 P.3d 552 (2017), the supreme court held that the defendant's placement of marijuana plants in his fenced backyard, the activities in which were not capable of observation by members of the public at ground-level, was "indicative of his subjective intent to avoid the public gaze[.]"  Id. at 122, 405 P.3d at 558 (original brackets omitted).  Cf. State v. Mahone, 67 Haw. 644, 648, 701

---

[6]    The label of a finding of fact or a conclusion of law does not determine the standard of review.  City & Cnty. of Honolulu v. Honolulu Police Comm'n, 151 Hawaiʻi 56, 62, 508 P.3d 851, 857 (App. 2022) (citing Crosby v. State Dep't of Budget & Fin., 76 Hawaiʻi 332, 340, 876 P.2d 1300, 1308 (1994)).  The question whether a circuit court's determination is a finding of fact or a conclusion of law is a question of law, freely reviewable by an appellate court.  See Kilauea Neighborhood Ass'n v. Land Use Comm'n, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988) (citation omitted).

P.2d 171, 174-75 (1985) ("The right to claim the protection of the Fourth Amendment of the United States Constitution or Article I, Section 7 of the [Hawaiʻi] Constitution depends upon whether the area searched was one in which there was a reasonable expectation of freedom from government intrusion. One has no standing to complain of a search of property he has voluntarily abandoned.") (citations omitted). COL no. 3 is supported by substantial evidence in the record and reflects an application of the correct rule of law; it was not clearly erroneous.

The circuit court concluded:

> 4. Even if [Paulich] had a subjective expectation of privacy, it is not an expectation that society would recognize as reasonable as [Paulich]'s property was left unattended on the side of the road and was clearly associated with a vehicle that had been involved in a fatal car crash and was partially blocking lanes of travel. State v. Kolia, 116 Hawaiʻi 29, 34, 169 P.3d 981, 986 (Ct. App. 2007).

In State v. Kolia, 116 Hawaiʻi 29, 169 P.3d 981 (App. 2007), we held that the defendant "relinquished any expectation of privacy that he had in the fanny pack when he voluntarily discarded it while fleeing from the police." Id. at 31, 169 P.3d at 983; see also Mahone, 67 Haw. at 648, 701 P.2d at 174-75. COL no. 4, a mixed finding of fact and conclusion of law, is supported by substantial evidence in the record and reflects an application of the correct rule of law; it was not clearly erroneous.

The circuit court concluded:

> 5. Further, even if the two part test in Katz is satisfied, the police officers on scene were investigating a fatal vehicle crash in which the operator of the vehicle had fled the scene, to the extent a search was conducted the investigating officers were faced with exigent circumstances that required immediate police action to try and forestall the likely escape of a suspect who had already distanced themselves from the scene of the crime. State v. Dorson, 62 Haw. 377, 384-85, 615 P.2d 740, 746 (1980).

In State v. Dorson, 62 Haw. 377, 615 P.2d 740 (1980), the supreme court held:

> An exigency, for the purposes of a warrantless search or seizure, exists when immediate police action is required to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence. To justify a warrantless search or seizure, the government must be able to show that it was impracticable for the police to obtain a warrant, or that the delay attendant upon the application for, and the issuance of, the warrant would have likely resulted in the removal or destruction of evidence.

Id. at 384–85, 615 P.2d at 746 (citations omitted).

In this case there was no exigency because the Cadillac was disabled[7] and abandoned, had been impounded, and the driver had already fled the scene. COL no. 5, a mixed finding of fact and conclusion of law, was clearly erroneous. The error does not, however, require that the Judgment be vacated, for the other reasons explained in this summary disposition order.

The circuit court concluded:

> 6. Finally, even if the two part test in Katz is satisfied and there was not exigent circumstances justifying the warrantless search, the discovery was inevitable as the investigating officers seized all of the evidence at the scene and later applied for search warrants to search and inventory the contents of the sedan which was the subject of the complained of warrantless search. Clear and convincing evidence was put forth that in fatal collisions the vehicles are seized by police as evidence for later investigation, which occurred in this case. State v. Lopez, 896 P.2d 889 (Haw. 1995).

In State v. Lopez, 78 Hawai'i 433, 896 P.2d 889 (1995), the supreme court adopted the federal concept of inevitable discovery, stating that "the inevitable discovery exception to the exclusionary rule is a sound principle, which prevents the setting aside of convictions that would have been obtained in the absence of police misconduct." Id. at 451, 896 P.2d at 907. The State must, however, "present clear and convincing evidence that any evidence obtained in violation of article I, section 7 [of

---

[7] Officer Keliipaakaua testified that the front passenger side of the Cadillac, including the wheel rim and tire, was heavily damaged. The tire was flat with the metal part of the rim protruding from the tire, touching the ground. Officer Keliipaakaua also testified that he saw white markings on the asphalt roadway, which appeared to have been caused by something grinding on the asphalt.

the Hawaiʻi Constitution], would inevitably have been discovered by lawful means before such evidence may be admitted under the inevitable discovery exception to the exclusionary rule." Id. (footnote omitted). The circuit court found that warrants to enter and recover evidence from the Cadillac and Paulich's wallet were subsequently issued. The warrants were admitted into evidence. Paulich does not challenge those findings, or the issuance of the search warrants.

COL no. 6, a mixed finding of fact and conclusion of law, is supported by substantial evidence in the record and reflects an application of the correct rule of law; it was not clearly erroneous.

The circuit court concluded:

> 7.    To the extent any complained of search violated [Paulich]'s rights to be free from unreasonable search and seizure, the search did not result in any 'fruit' which would require suppression as [Paulich]'s identity as a possible operator was already known from the investigating officers conducting a registered owner check of the vehicle which was accomplished without entering the vehicle.

COL no. 7, a mixed finding of fact and conclusion of law, is supported by substantial evidence in the record and reflects an application of the correct rule of law; it was not clearly erroneous.

We conclude that the circuit court did not err by denying Paulich's motion to suppress evidence obtained during the warrantless searches of her car and wallet. In addition, Paulich has not shown that any evidence obtained as a result of the warrantless searches of her car and wallet was admitted at trial.

**2.**    The circuit court denied Paulich's motion to suppress the statements she made to HCPD officers at her residence on the night of the collision. She argues that Officer Keliipaakaua obtained her residence address from her state identification card, which he found after a warrantless search of her purse. However, the circuit court found, and Paulich does not challenge, that after the license plate check identified

Paulich as a registered owner of the Cadillac, Officer Parayano told Officer Keliipaakaua he knew where Paulich lived from previous contacts with her. Officer Keliipaakaua and Officers Parayano and Foxworthy went to Paulich's residence at about 11:50 p.m., three to four hours after the initial report of the collision.

The police officers knocked on Paulich's door. Paulich appeared. Officer Keliipaakaua identified himself and the other officers, and asked Paulich to come outside so they could speak with her. Paulich said she did not want to go outside, but invited the officers to enter her residence. All three officers entered Paulich's residence. Paulich testified that she did not believe she was going to be arrested on July 16, 2018, she did not feel threatened, she spoke to the police officers freely, and she just wanted to know why the officers were there and to answer their questions. She never asked the officers to leave her residence.

At trial, Officer Keliipaakaua testified:

> Q. (By [the State]) And did you have a conversation with [Paulich] that night?
>
> A. Yes.
>
> Q. Did you ask her what kind of vehicle she owns?
>
> A. Yes.
>
> Q. And what did she say?
>
> A. She said that she -- she owns a Cadillac sedan.
>
> . . . .
>
> Q. Did you ask her where her vehicle was?
>
> A. Yes.
>
> Q. And what did she say?
>
> A. She said that it was in the garage of her, uh, garage of her residence.
>
> Q. And when you walked up to the residence could you see the garage?
>
> A. Yes. It was a open carport.

Q. Okay. And you could see directly into that?

A. Yes.

Q. And was there a vehicle in the carport?

A. No, it was empty.

Q. While you were talking with [Paulich] did you ask her if she had gone anywhere that day?

A. Yes.

Q. What did she say?

A. She said she had gone to the store earlier.

Q. Did she refer to what store she went to or what, um, the area the store was located?

A. Yes.

Q. Where -- what -- what was the general area that she said she went to?

A. Uh, general area of Ocean View.

Q. Okay. And did she indicate whether or not anyone else drives her vehicle?

A. She said she was the only driver.

Paulich argues that Officer Keliipaakaua's testimony about what Paulich said to him the night of July 16, 2018, should have been suppressed because she was not advised of her <u>Miranda</u> rights. The circuit court concluded:

> 2. [Paulich] was not in custody on July 16, 2018 at the time the statements were made to Officers present at her residence, she invited officers into her home and was not placed under arrest as police did not have probable cause to arrest her at the time as they did not feel they had enough information relating to the identity of the driver of the sedan, her freedom had not been deprived, and therefore the requirements of <u>Miranda</u> do not apply to the statements made by [Paulich]; these statements may be used by the State upon establishing proper foundation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed.2d 694 (1966)[.]

COL no. 2, a mixed finding of fact and conclusion of law, is supported by substantial evidence in the record and reflects an application of the correct rule of law; it was not clearly erroneous.

**3.** The circuit court denied Paulich's motion to suppress the statements she made to HCPD officers at the Kona station on March 14, 2019. Paulich does not contest that she understood and initialed an advice-of-rights form, admitted into evidence as State's exhibit 1. However, she argues that her consent was coerced by a deliberate extrinsic falsehood: because the police officers did not tell her "that a main factor is whether the accident occurred due to intoxication,[8] [she] was deprived of making a knowing, intelligent, and voluntary waiver of her rights under [Miranda]." She does not cite to evidence in the record to support her argument,[9] as required by HRAP Rule 28(b)(7). Although we are not obliged to "sift through the voluminous record to verify an appellant's inadequately documented contentions[,]" Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004), we address her argument because the circuit court found, and the State does not dispute:

> 61. Officers did not inform [Paulich] that being under the influence of drugs or alcohol was an element of the offences [sic] she was being investigated for.

In State v. Matsumoto, 145 Hawaiʻi 313, 452 P.3d 310 (2019), the supreme court noted that "a deliberate falsehood will be regarded as coercive per se if the falsehood is extrinsic to the facts of the alleged offense and is of a type reasonably likely to procure an untrue statement or to influence an accused to make a confession regardless of guilt." Id. at 325, 452 P.3d

---

[8]     HRS § 707-702.5 (2014) provides, in relevant part:

(1)     A person commits the offense of negligent homicide in the first degree if that person causes the death of:

(a)     Another person by the operation of a vehicle in a negligent manner while under the influence of drugs or alcohol[.]

[9]     Paulich cites only to her proposed findings of fact, which contain no citations to the trial court record and are not themselves evidence.

at 322 (citing State v. Kelekolio, 74 Haw. 479, 511, 849 P.2d 58, 73 (1993)).

In Kelekolio, the supreme court adopted the rule that "deliberate falsehoods extrinsic to the facts of the alleged offense, which are of a type reasonably likely to procure an untrue statement or to influence an accused to make a confession regardless of guilt, will be regarded as coercive per se[.]" Id. at 511, 849 P.2d at 73. The court explained:

> Some examples of extrinsic falsehoods — of a type reasonably likely to procure an untrue statement or to influence an accused to make a confession regardless of guilt — would include (1) assurances of divine salvation upon confession, (2) promises of mental health treatment in exchange for a confession, (3) assurances of treatment in a "nice hospital" (in which the defendant could have his personal belongings and be visited by his girlfriend) in lieu of incarceration, in exchange for a confession, (4) promises of more favorable treatment in the event of a confession, (5) misrepresentations of legal principles, such as (a) suggesting that the defendant would have the burden of convincing a judge and jury at trial that he was "perfectly innocent" and had nothing to do with the offense, (b) misrepresenting the consequences of a "habitual offender" conviction, and (c) holding out that the defendant's confession cannot be used against him at trial, and (6) misrepresentations by an interrogating police officer, who is a close friend of the defendant, that the defendant's failure to confess will get the officer into trouble with his superiors and jeopardize the well-being of the officer's pregnant wife and children[.]

Id. at 512–13, 849 P.2d at 73–74 (citations omitted).

An investigating law enforcement officer's failure to tell a suspect the elements of any criminal offense of which the suspect may be charged is "extrinsic to facts of the alleged offense in question[.]" Kelekolio, 74 Haw. at 511, 849 P.2d at 73. Paulich fails to explain how the police officers' failure to tell her that intoxication is an element of negligent homicide in the first degree was "reasonably likely to induce an untrue statement or to influence [her] to make a confession regardless of guilt." Matsumoto, 145 Hawaiʻi at 326, 452 P.3d at 323. Paulich did not confess to driving while intoxicated, nor was evidence of any such confession introduced at trial. Paulich was ultimately found guilty of Negligent Homicide in the Second

12

Degree, an offense of which intoxication is not an element. <u>See</u> discussion below in section 4.

In <u>Matsumoto</u> the defendant "confessed to a crime after an interrogating officer informed him, untruthfully, that he did not pass a polygraph test." <u>Id.</u> at 316, 452 P.3d at 313. After a comprehensive analysis of the extensive literature and research establishing "the coercive nature of falsified polygraph test results[,]" the supreme court held that "inculpatory statements elicited during a custodial interrogation from a suspect whom has previously been given falsified polygraph results in the interrogation process are coercive per se and are inadmissible at trial." <u>Id.</u> at 326-27, 452 P.3d at 323-24 (citing <u>Kelekolio</u>, 74 Haw. at 511, 849 P.2d at 73). Paulich cites no legal or other authority for the proposition that a law enforcement officer is required to recite all of the elements of an offense to a suspect, or that the officer's failure to do so is coercive per se. We conclude that the officers' omission under the circumstances of this case was not coercive per se.

Paulich also argues that "[p]olice further misrepresented the law by mischaracterizing the length of an arrest before the probable cause determination created by the <u>Riverside</u> case." She cited <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 57 (1991), a class action challenging the manner in which a California county provided "probable cause determinations to persons *arrested without a warrant*." <u>Id.</u> at 47 (emphasis added). The Supreme Court stated: "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein[ v. Pugh</u>, 420 U.S. 103 (1975) and] . . . be immune from *systemic* challenges." <u>Id.</u> at 56 (emphasis added). The Court then stated that "in a particular case[,]" a probable cause determination could be challenged "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." <u>Id.</u>

Riverside is inapposite. Here, the determination that there was probable cause to arrest Paulich was made before she was arrested. The circuit court found, and Paulich does not dispute:

> 57. Before [Paulich]'s arrest [the] officer made telephone calls attempting to locate Paulich.
>
> 58. As a result of the telephone calls made, [o]n March 13, 2019, Paulich learned there was a warrant out for her arrest.
>
> 59. Paulich testified that she was unable to sleep after learning there was a warrant out for her arrest.

Paulich was arrested pursuant to a warrant. Riverside does not apply.

**4.** Paulich contends there was insufficient evidence to support the jury's verdict. When reviewing the sufficiency of evidence on appeal, we apply the following deferential standard of review:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (citation omitted). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id.

Paulich was found guilty of the included offense of Negligent Homicide in the Second Degree. HRS § 707-703 (2014) provides, in relevant part:

> (1) A person commits the offense of negligent homicide in the second degree if that person causes the death of:
>
> (a) Another person by the operation of a vehicle in a negligent manner[.]

14

The evidence presented at trial, including testimony from eyewitness Charles Brown, Officer Keliipaakaua, and Paulich herself, considered in the light most favorable to the State, supported the jury's verdict.

Paulich was also found guilty of Accidents Involving Death or Serious Bodily Injury.  HRS § 291C-12 (1993) provides, in relevant part:

> (a)   The driver of any vehicle involved in an accident resulting in serious bodily injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of section 291C-14.  Every such stop shall be made without obstructing traffic more than is necessary.

The evidence presented at trial, considered in the light most favorable to the State, supported the jury's verdict.

For the foregoing reasons, the "Judgment of Conviction and Sentence" entered by the circuit court on July 28, 2021, is affirmed.

DATED:  Honolulu, Hawai'i, February 21, 2023.

On the briefs:

Eli N. Bowman,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge